No. 25-2165

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

STATE OF CALIFORNIA, *et al.*,

Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Massachusetts

## COMBINED SUPPLEMENTAL BRIEF AND
## REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

*Of Counsel:*

MICHAEL B. STUART
  *General Counsel*

ELIZABETH KELLEY
  *Acting Deputy General Counsel*

U.S. Department of Health and
  Human Services

BRETT A. SHUMATE
  *Assistant Attorney General*

LEAH B. FOLEY
  *United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-0211*

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

ARGUMENT ........................................................................................................3

I.    Defendants are likely to succeed on the merits. ......................................3

    A.    The challenged provision is not ambiguous, as confirmed by this Court's decision in *Planned Parenthood*. ......................................3

    B.    Plaintiffs' argument rests on an untenable view of the Spending Clause. ................................................................................8

II.    The equities favor a stay. ........................................................................13

CONCLUSION....................................................................................................14

CERTIFICATE OF COMPLIANCE

# INTRODUCTION AND SUMMARY OF ARGUMENT

On December 14, 2025, this Court ordered the government to file a supplemental brief on the effect on this appeal of this Court's recent decision in *Planned Parenthood v. Kennedy*, Nos. 25-1698 & 25-1755, 2025 WL 3563200 (1st Cir. Dec. 12, 2025). In the interest of judicial economy, defendants combine their reply in support of their stay motion with the supplemental brief ordered by the Court (complying with the page limit set for the supplemental brief). This Court's recent decision confirms that Section 71113 delineates its requirements with sufficient clarity to satisfy the Spending Clause. And plaintiffs' other arguments are meritless.

As this Court's recent decision shows, Section 71113 has a clear meaning that is readily susceptible to principled application. Plaintiffs' primary argument relates to the term "affiliate," but this Court agreed with the government's understanding of that term, holding that "the best reading of Section 71113" is that Congress used the term "affiliate" consistently with the *Black's Law Dictionary* definition. *Planned Parenthood*, 2025 WL 3563200, at *9. Plaintiffs' other ostensible ambiguities fare no better. The statute dictates that States must look nationwide to determine whether a provider has met the $800,000 criterion. And the terms "family planning services" and "reproductive health" have commonly understood meanings in the context of Medicaid funding.

Underscoring how clear these criteria are, plaintiffs have not identified a single provider as to which application of Section 71113 might be ambiguous, much less demonstrated that the term is ambiguous across the board.

The lack of ambiguity is sufficient to resolve this case under any plausibly relevant standard, but in any event, plaintiffs misunderstand the standard that applies. Medicaid funding limitations can sometimes pose challenging questions of statutory interpretation. Even when that is the case (unlike here), there has never been a serious constitutional question raised about whether Congress is entitled to impose conditions akin to the one it enacted here. The Spending Clause requires Congress to set spending conditions clearly, but it does not provide a basis for parties to generate ambiguity in clear statutes and then demand the wholesale invalidation of spending conditions (or even to demand the automatic adoption of a narrowing construction). And that principle is particularly clear where, as here, the bargain Congress has struck with the State is for the State to receive federal matching funds for its expenditures meeting specified conditions, rather than to accept conditions in exchange for the right to expend funds as it sees fit. *See NFIB v. Sebelius*, 567 U.S. 519, 580 (2012) (lead opinion). No constitutional principle forbids Congress from so legislating, even if the application

of such restrictions may require answering difficult questions of statutory interpretation in some cases, applying all the ordinary tools of construction.

The district court erred in enjoining enforcement of Section 71113, and the equities favor permitting implementation of this Act of Congress. A stay pending appeal is warranted.

## ARGUMENT

I. **Defendants are likely to succeed on the merits.**

   A. **The challenged provision is not ambiguous, as confirmed by this Court's decision in Planned Parenthood.**

Plaintiffs seek to gin up ambiguities in a clear statute. But that effort is unavailing given the existence of entities as to which the statute's application is beyond dispute and the absence of any identified entities as to which the statute's application is uncertain. And in any event, even plaintiffs' abstract quarrels are meritless. Plaintiffs emphasize three points of purported ambiguity, but the text provides clear answers to each of them.

**1.** In *Planned Parenthood*, this Court interpreted the term "affiliates" by "apply[ing] the ordinary presumption—absent contrary evidence—that Congress knows and adopts the widely accepted legal definitions of meanings associated with the specific words enshrined in the statute." *Planned Parenthood*, 2025 WL 3563200, at *9

3

(cleaned up); *see also Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643-44 (1999) (background common-law rules can provide clear notice of a condition on receipt of federal funds). That definition is simple: a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Planned Parenthood*, 2025 WL 3563200, at *9 (quoting *Affiliate*, Black's Law Dictionary (12th ed. 2024)); *see id.* at *10 n.12 (noting that "CMS interprets Section 71113's term 'affiliate,' and the term 'control' within that definition, in the same manner as the Black's Law Dictionary definition" cited by the Court); *see also* Add.51, 52 n.4.

Plaintiffs take issue (Opp.10-13) with this definition, contending not that it is unclear, but instead that other definitions could plausibly apply. Statutory context, however, makes clear that Congress is not silently incorporating a technical definition from the Tax Code, *contra* Opp.10 (citing 26 U.S.C. § 1504(a)(2)), or using the word as a verb rather than a noun, *contra* Opp.10 (quoting *Affiliate*, v. (1(a) & (b)), Merriam Webster, https://tinyurl.com/jukk3eb2).

Plaintiffs correctly note that "context is everything in interpretation." Opp.11 (quoting *International Confections Co. v. Z Cap. Grp.*, No. 22-3403, 2023 WL 335285, at *3 (6th Cir. Jan. 20, 2023)); *see also* Mot.14 (collecting cases). Here, as this Court

4

observed, the most direct context is as part of a list: "affiliates, subsidiaries, successors, and clinics." 139 Stat. 300. "[S]tatutory words are often known by the company they keep," and here the company is "a corporate-control cluster of terms." *Planned Parenthood*, 2025 WL 3563200, at *9. In that context, affiliate has a "settled corporate meaning," which "also aligns with how the term is used across federal law." *Id.*; *see also International Confections*, 2023 WL 335285, at *2 ("'Affiliate' has a straightforward meaning in corporate law"— one that turns on "common ownership or control."). When the word is read in its proper context, there is no ambiguity about what Congress meant by "affiliate" in Section 71113.

**2.** Plaintiffs' other statutory arguments fare no better. Plaintiffs contend (Opp.13) that they do not know whether an entity must receive more than $800,000 in state and federal Medicaid funds within a single state or nationwide to qualify as a prohibited entity. The statute answers that question by referring to the "*total* amount of Federal and State expenditures under the Medicaid program." 139 Stat. 300 (emphasis added). It makes no reference to any geographical limitation, and it imposes a nationwide bar on receipt of federal Medicaid funds. The plain text thus indicates that an entity satisfies this criterion if it receives in aggregate more than $800,000 in state and federal Medicaid funds regardless of which State provides the funds. That plaintiffs do

5

not currently track out-of-state expenditures is irrelevant to the question of ambiguity (and they could presumably just require the relevant providers to report out-of-state funding sources to them), *see* 42 C.F.R. §§ 431.107(b)(1)-(2), 438.604(b). Plaintiffs adopt the district court's observation that "the federal government could effectively direct States to conduct their own ad hoc investigation into the out-of-state expenditures received by potential in-state prohibited entities." Opp.13 (quoting Add.28) (cleaned up). Congress has done just that, *see* Add.51, but plaintiffs cannot show that the requirement is unconstitutional any more than they can object to their longstanding obligation to identify and pursue third parties liable to pay for Medicaid services, *see* 42 U.S.C. § 1396a(i)(25)(A); 42 C.F.R. pt. 433 subpt. D. That plaintiffs have not identified a provider that would otherwise meet the prohibited entity criteria but received only $799,000 in a single State only underscores that they are fruitlessly searching for an edge case to try to dismantle a clear statutory provision.

**3.** Plaintiffs also object (Opp.14) to the phrase "primarily engaged in family planning services, reproductive health, and related medical care." The terms "family planning services" and "reproductive health" both have established meanings in the context of Medicaid. The federal government pays for 90% of Medicaid spending on "family planning services and supplies." 42 U.S.C. § 1396b(a)(5). States, therefore, must

6

regularly determine whether a provider has offered "family planning services." States also know what "reproductive health" means. For example, States, including some plaintiffs here, have applied for statutory waivers to expand access to "reproductive health" for their Medicaid programs. *E.g.*, Letter from Illinois to CMS, 2011 WL 9373942, at *3 (Aug. 22, 2011) (seeking approval for demonstration project "designed to … expand[ ] access to publicly funded family planning services and related reproductive health care"). Plaintiffs' objection that "related medical care" is too "broad-sweeping" is similarly not well taken, because that phrase draws its meaning from the preceding list, *see In re Coughlin*, 33 F.4th 600, 609 (1st Cir. 2022), *aff'd sub nom. Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382 (2023). It certainly cannot be the case that any catchall provision at the end of a list defeats a spending condition. Underscoring the clarity of this provision, plaintiffs point to no actual ambiguity in how they interpret these provisions. *Cf.* Dkt. 62-6 ¶ 23, 62-10 ¶ 19, 62-13 ¶ 31 (cited in Opp.14) (asserting only that providers have made inquiries about whether they qualify as prohibited entities, not that States were unable to provide answers); Dkt. 62-11 ¶ 8; 62-15 ¶ 19; 62-20 ¶ 23 (cited in Op.19) (bare assertion of difficulty in applying criteria without asserting problems with any specific providers).

Finally, plaintiffs do not defend the district court's novel analysis, *see* Add.33-34, holding Section 71113 impermissibly retroactive because Congress adopted it after CMS approved plaintiffs' Medicaid state plans. That holding was error. *See* Mot.19-21.

B.  **Plaintiffs' argument rests on an untenable view of the Spending Clause.**

In any event, even if plaintiffs were correct that Section 71113 might be unclear in certain of its applications, that would not mean the provision is unconstitutional (or even subject to a narrow-construction rule).

**1.** Plaintiffs claim (Opp.18) that the Spending Clause renders any spending provision facially invalid if a State can ascribe to it multiple meanings, but that position is not consistent with Spending Clause jurisprudence. Plaintiffs fail to understand (Opp.17) how the Supreme Court has applied the clear-statement rule it set out in *Pennhurst State School and Hospital. v. Halderman*, 451 U.S. 1 (1981)). These errors lead plaintiffs to apply the wrong standard to this challenge. And in any event, as explained, *supra* pp. 3-7, the provision at issue is clear and satisfies any plausibly relevant standard.

**1.** Congress has undoubted authority to "attach appropriate conditions to federal taxing and spending programs to preserve its control over the use of federal

funds." *NFIB*, 567 U.S. at 579 (lead opinion). In the Medicaid program, the deal Congress has struck with the States is simple and well understood: if the States' expenditures accord with the requirements Congress has set out, the federal government matches them with federal funds. Such conditions are "the means by which Congress ensures that the funds are spent according to its view of the 'general Welfare.'" *Id.*

Nothing about Section 71113 changes the fundamental bargain of the Medicaid program to which States have long agreed. The States had already agreed to administer the Medicaid program and agreed that Congress could alter the applicable rules, *see* 42 U.S.C. § 1304. "Because Congress has reserved in the Medicaid Act the power to 'alter' or 'amend' the Medicaid program, [S]tates have had fair notice that Congress may make incremental changes," *Mayhew v. Burwell*, 772 F.3d 80, 93 (1st Cir. 2014), and "Congress has in fact done so, sometimes conditioning only the new funding, other times both old and new," *NFIB*, 567 U.S. at 583 (lead opinion). And States never had any reasonable expectation that every limitation on the expenditure of federal Medicaid funds would be clear in every case; to the contrary, they have long understood that Medicaid has an extensive system of audits, appeals, reconciliations, and other measures (including judicial review) designed to resolve disputes regarding the appropriateness of

reimbursement in an individual case under the sometimes-byzantine rules governing the program. *See, e.g.*, 42 U.S.C. § 1316 (describing exclusive procedures for administrative and judicial review of Medicaid state plan approval and disallowance determinations); 42 C.F.R. pt. 201, subpt. B (describing procedures for review and audits of state and local agencies); 45 C.F.R. pt 16 (describing administrative review procedures). Adding an additional rule—indeed, one that is not very complicated—does not create any constitutional problem.

This dispute-resolution scheme provides crucial context for the funding condition. If plaintiffs misapprehend the clear requirements of Section 71113, they "must return the federal funds used to pay … claims" in violation of the statute, Add.26—funds they may, in many cases, then turn around and collect from the provider who was erroneously paid, *see* 42 C.F.R. §§ 433.312, 438.608(d). These reimbursements happen all the time pursuant to the review procedures and audits described above.

For three distinct reasons, this case bears no resemblance to the cases on which plaintiffs rely. First, the *Pennhurst* clarity requirement is a rule of fairness to funding recipients: It applies where they are at risk of losing funds, or incurring monetary liability, if they misinterpret a funding condition. *Cf. Cummings v. Premier Rehab*

*Keller, P.L.L.C.*, 596 U.S. 212 (2022) (obligation to pay emotional-distress damages); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) (obligation to pay expert fees); *Kentucky v. Yellen*, 54 F.4th 325 (6th Cir. 2022) (risk of losing stimulus funds); *West Virginia v. U.S. Dep't of the Treasury*, 59 F.4th 1124 (11th Cir. 2023) (same). States face no such risk here. If a State misinterprets Section 71113, the only consequence will be returning the funds (and perhaps recovering them from the provider). *See* Add.26.

Second, the vast majority of applications of the *Pennhurst* clarity requirement have involved a concrete dispute over the application of a funding condition to particular circumstances. In those contexts, courts have applied the *Pennhurst* clarity requirement as a tool of statutory construction for resolving the dispute. In *Cummings*, for example, the Supreme Court held that a funding recipient was not obligated to pay emotional-distress damages because the funding condition did not provide clear notice of that obligation, and in *Arlington Central* the Supreme Court held that the funding recipient was not obligated to pay expert fees because the funding condition did not provide clear notice of that obligation. Here, even assuming there might ever arise some dispute about how Section 71113 applies to particular circumstances, no such dispute has yet arisen. And the possibility that such a dispute might arise as to the application of

11

a given funding condition does not mean the condition is unconstitutional, else the implication of the rulings in *Cummings* and *Arlington Central* would have been that the provisions in question in those cases were unconstitutional too.

Third, in the handful of cases that plaintiffs cite where courts have applied the *Pennhurst* clarity requirement as a basis for holding a funding condition unconstitutional on its face, the problem was not that the condition might be ambiguous in its application to particular circumstances (which is all that plaintiffs have suggested of the condition here). It was that the condition was, in the courts' view, not "ascertainable" at all—in other words, not capable of application in *any* circumstance. *See West Virginia*, 59 F.4th at 1140-46. Indeed, the *West Virginia* court expressly did "not question an agency's authority to fill in gaps that may exist in a spending condition," recognizing that *Pennhurst* does not invalidate statutory conditions that may be unclear in their application to certain circumstances. *Id.* at 1148.

Here, core applications of Section 71113 are beyond cavil; plaintiffs at best assert that certain edge cases might present harder questions—and even those efforts fail to gin up ambiguities or require automatic application of a narrowing construction.

**2.** Plaintiffs also note (Opp.17-19) that the parties in many cases involving Medicaid disputes did not raise Spending Clause challenges. It is unclear why plaintiffs

regard the longstanding operation of the program without significant constitutional objections as a point in their favor. Similarly, plaintiffs' argument that in previous Medicaid disputes, courts have "analyzed two conflicting interpretations of a Medicaid provision and decided which reflected the better reading," Opp.18, refutes rather than supports their apparent view that the existence of competing interpretations somehow renders a provision invalid in its entirety (or even subject to a narrow-construction rule). To the extent that plaintiffs suggest that the existence of more than two possible definitions has constitutional significance, they provide no support for that unlikely proposition.

## II. The equities favor a stay.

The *Planned Parenthood* plaintiffs asserted that Section 71113 posed an existential threat to their health centers, but this Court nevertheless granted a stay pending appeal. *Planned Parenthood v. Kennedy*, Nos. 25-1698, 25-1755, 2025 U.S. App. LEXIS 24987, at *4 (1st Cir. Sep. 11, 2025). Plaintiffs here assert no such comparable harm, while defendants suffer the same harms from their inability to implement an Act of Congress, *see District 4 Lodge of the Int'l Ass'n of Machinists v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021). It follows *a fortiori* that a stay is warranted here too.

## CONCLUSION

The Court should stay the injunction pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

*Of Counsel:*

MICHAEL B. STUART
  *General Counsel*

ELIZABETH KELLEY
  *Acting Deputy General Counsel*

  *U.S. Department of Health and Human Services*

LEAH B. FOLEY
  *United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY

 /s/ Maxwell A. Baldi

MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-0211*
  *maxwell.baldi@usdoj.gov*

December 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limit set by this Court's order of December 14, 2025, because it contains 14 pages. This brief also complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in EB Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI
